# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROCHELLE IBAROLLA, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 12 C 4848 |
| v. | Judge Marvin E. Aspen |
| NUTREX RESEARCH, INC., and VITAMIN SHOPPE, INC., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Plaintiff Rochelle Ibarolla ("Plaintiff"), individually and on behalf of a proposed national class of similarly situated plaintiffs, filed a six-count complaint against Defendants Nutrex Research, Inc. ("Nutrex") and Vitamin Shoppe, Inc. ("Vitamin Shoppe") (collectively, "Defendants"), alleging (1) violation of state consumer protection statutes, (2) negligence, (3) common law fraud, (4) breach of express and implied warranties, (5) unjust enrichment, and (6) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. ("ICFA"). Presently before us is Defendants' motion to dismiss for failure to state a claim. For the reasons stated below, we grant Defendants' motion and dismiss the complaint with leave to amend.

## BACKGROUND

We draw the following facts directly from the complaint and accept them as true for the purposes of the present motion. Nutrex is a manufacturer and distributor of nutritional supplements for athletes and professional bodybuilders. (Compl. ¶ 17.) Vitamin Shoppe, a retailer of nutritional and sports supplements, sold Plaintiff "one or more" of six Nutrex products: Hemo Rage Black, Hemo Rage Black Ultra Concentrate, Lipo-6 Black, Lipo-6 Black Ultra Concentrate, Lipo-6 Black Hers, and Lipo-6 Black Hers Ultra Concentrate. (*Id.* ¶¶ 18, 40–42.) When purchasing the products, Plaintiff relied on Nutrex's promotional material, which touted the effectiveness of the products as dietary aids and omitted any reference to any potentially dangerous side effects of their ingredients. (*Id.* ¶¶ 40–42.) Vitamin Shoppe likewise failed to warn Plaintiff about any potential dangers of the products it sold her. (*Id.* ¶ 39.)

After buying the Nutrex products, Plaintiff learned that they contained DMAA (a synthetic compound originally developed as a nasal decongestant), caffeine, synephrine, yohime, thyronine, and other stimulants—ingredients that may produce severe side effects when taken in large doses or in combination with one another. (*Id.* ¶¶ 3, 43.) Had Defendants informed Plaintiff about these ingredients, she would not have purchased the Nutrex products. (*Id.* ¶ 44.) Therefore, Plaintiff alleges that she "lost substantial money purchasing products she would not have otherwise purchased." (*Id.*)

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's

favor. *Thompson v. Ill. Dep't. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964.

For claims that sound in fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, "an allegation of fraud must include the 'who, what, when, where, and how: the first paragraph of any newspaper story.'" *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990). In other words, "a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens*, 912 F.2d 889,

893 (7th Cir. 1990). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

## ANALYSIS

### A. Claims For Common Law Fraud and Violations of State Consumer Protection Statutes (Counts I, III, and VI)

Plaintiff claims that Defendants fraudulently misrepresented the safety and effectiveness of the products containing DMAA and other allegedly dangerous ingredients. She alleges common law fraud (Count III) (Compl. ¶¶ 67–73), as well as violations of numerous state consumer protection statutes on behalf of a national class (Count I) (*id.* ¶¶ 54–61) and the ICFA on behalf of an Illinois subclass (Count VI) (*id.* ¶¶ 87–93). Claims for violation of the ICFA "are subject to the same heightened pleading standards as other fraud claims; as such, they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).[1]

The facts alleged in this complaint are insufficient to state a claim under Rule 9(b). The first problem is that Plaintiff claims to have purchased "one or more" of six named Nutrex products. (Compl. ¶ 42.) Without specifying which product she actually purchased, we cannot determine what particular misrepresentations Plaintiff relied on.

---

[1] The parties agree that the court should apply Illinois substantive law for the purposes of ruling on the motion to dismiss. (Compl. ¶¶ 11–15; Mem. at 2 ("Because no nationwide class has been certified, this motion addresses only the Illinois law applicable to Ms. Ibarolla's claims.").) Moreover, Plaintiff is an Illinois resident alleging injury in Illinois. (Compl. ¶¶ 14, 16.) Accordingly, we apply the standards governing ICFA to test the sufficieny of Plaintiff's statutory claims under both Count I and VI. *See Pirelli Armstrong Tire Corp., Retiree Med. Benefits Trust v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *5 (N.D. Ill. Feb. 18, 2010).

Plaintiff alleges generally that the products' labels gave no warning of the dangerous ingredients they contained. (*Id.* ¶ 41.) She further claims that "Nutrex lures customers to purchase these products by boasting that they are 'the strongest fat destroyer we have ever released,' and proclaiming that they 'attack body fat with a killer instinct formulated to destroy it whenever the two meet.'"[2] (*Id.* ¶ 22.) It is not plausible, however, that Defendants labeled and marketed all six products named by Plaintiff in an identical manner. Unless Plaintiff identifies which product(s) she actually inspected and purchased, she cannot possibly state with the requisite specificity the content of the alleged misrepresentation. *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL-1703, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009) (dismissing certain fraud claims under Rule 9(b) where "plaintiffs fail to allege that they saw any *particular* misrepresentation or the *specific content* of the misrepresentation.") (emphasis added).

In *Sears, Roebuck & Co.*, the plaintiffs described specific advertisements that contained alleged misrepresentations, but failed to allege that they actually saw those particular advertisements. *Id.* The court held that the plaintiffs' "failure to identify the misrepresentation they saw and relied upon is fatal to their claim," because "plaintiffs have the burden of alleging specifically *which* commercials they saw and the content of those commercials." *Id.* Similarly, Plaintiff alleges here that "she saw a number of Nutrex products that claimed to be supremely effective . . ." and that "she carefully inspected the label to learn more about the ingredients in

---

[2] Defendants urge that these statements are not factual misrepresentations, but rather "non-actionable puffery." (Mem. at 7.) Because we hold that Plaintiff's allegations are insufficiently specific to determine what misrepresentations she actually claims to have relied on, we will not address Defendants' argument at this time.

these products." (Compl. ¶ 41.) But her failure to identify which of the six named products she actually inspected or purchased, and therefore the specific representations she relied on, makes her claim insufficiently particular under Rule 9(b).

Plaintiff further fails to adequately specify when the alleged fraud happened. She merely states that she "entered a Vitamin Shoppe store in order to purchase a dietary supplement for weight loss." (*Id*. ¶ 40.) Nowhere does Plaintiff identify even a broad time frame in which the purchase took place. That deficiency is also fatal to Plaintiff's claim. *See In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) (dismissing a fraud claim where the plaintiff alleged that the defendant "represented to the public that its potato products contained no allergens," but failed to specify "what the relevant time period is as to the representations made through the website.").

The relevant time frame is also significant to the issue of Defendants' knowledge. Under Illinois law, "where a plaintiff claims consumer fraud on the premise that the defendant concealed or omitted material facts from potential buyers with the intent that the buyers rely on such a concealment or omission, a plaintiff must allege that the fact omitted or concealed was known to the defendant at the time of the concealment." *Addison v. Distinctive Homes, Ltd.*, 359 Ill. App. 3d 997, 1001, 836 N.E.2d 88, 92 (1st Dist. 2005). Rule 9(b) allows that knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). The Supreme Court has cautioned, however, that "'generally' is a relative term . . . It does not give [a party] license to evade the less rigid—though still operative—strictures of Rule 8. And Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 686, 129 S. Ct. at 1954; *see also*

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) ("Although 'knowledge' and 'intent' may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."); *DiLeo*, 901 F.2d at 629 ("Although Rule 9(b) does not require 'particularity' with respect to the defendant's mental state, the complaint still must afford a basis for believing that plaintiffs could prove scienter.").

Plaintiff alleges that "Defendants knew that the representations that they made on the labeling, promotional materials, and to customers at the point of sale concerning the safety of their products were inaccurate and untrue." (Compl. ¶ 69.) We accept Plaintiff's general allegation of Defendants' knowledge as true, but only insofar as it is consistent with reasonable inferences we can draw from the facts in the complaint.

Plaintiff states that the FDA sent a warning letter to Nutrex on April 24, 2012, cautioning Nutrex that DMAA had potentially harmful side effects. (*Id.* ¶ 24.) According to Plaintiff, the FDA sent the letter because "there has been little research on the safety of DMAA." (*Id.* ¶ 25.) The letter concluded that "[i]n the absence of a history, use, or other evidence of [DMAA's] safety . . . your products are deemed to be adulterated under 21 U.S.C. 342(f)." (*Id.* ¶ 27, Ex. A at 2.) The most reasonable inference we can draw from these facts, as stated by Plaintiff, is that Defendants had little or no information about the safety of DMAA before receiving the warning from the FDA, but became aware of DMAA's potential dangers upon receiving the letter.

Reading the complaint in the light most favorable to Plaintiff for the purpose of this motion, we can also infer that Vitamin Shoppe knew about the dangers of DMAA after the FDA sent Nutrex the warning, because Plaintiff alleges that Vitamin Shoppe requires vendors to

submit information regarding their products for review by its regulatory department. Therefore we can presume for the sake of this motion to dismiss that Vitamin Shoppe learned about the danger of DMAA from Nutrex after Nutrex received the letter from the FDA.

There are no additional facts in the complaint from which we could infer that either of the Defendants had knowledge of the potential dangers of DMAA (or any other ingredient in the Nutrex products) before the FDA sent its warning. Plaintiff alleges that "the FDA has received 42 adverse event reports on products containing DMAA" (Compl. ¶ 28), but in the absence of any context, that number is meaningless. There is no way for us to know if 42 reports is an unusually large number for the FDA to receive, or even if the "adverse event" was causally related to DMAA or some other ingredient in those products. Further, we cannot impute knowledge to Defendants based on reports received by the FDA, absent an allegation that the FDA made the reports known to Defendants.

Plaintiff also points to a report that the U.S. Army began conducting an "ongoing safety review" after finding DMAA in the blood of two soldiers who died during physical training. (*Id.* ¶ 29.) This fact is equally devoid of any context that would give it significance—we have no idea whether the Army concluded that DMAA contributed to the deaths of the soldiers or restricted its use, for instance. Neither does Plaintiff allege that Defendants were aware of the Army's report. These facts do not support an inference that Defendants knew about the potential dangers of DMAA prior to receiving the FDA's letter.

It is therefore crucial that Plaintiff identify some time frame for the alleged fraud. Without it, the court can not determine what the Defendants knew at the time of the alleged misrepresentation. A specific time and date is not necessarily required, but there must be

sufficient information in the complaint that would allow us to infer that Defendants knew that Nutrex's ingredients were dangerous when Plaintiff purchased the products. *See, e.g.*, *Munch v. Sears, Roebuck & Co.*, No. 06 C 7023, 2008 WL 4450307, at *6 (N.D. Ill. Sept. 30, 2008) (dismissing a consumer fraud claim because the "Amended Complaint fails to identify a specific point at which the defendant clearly knew of the defect in its product, yet conveyed an opposite message to the plaintiffs.").

Because Plaintiff failed to state the content and timing of the alleged misrepresentations with the particularity required by Rule 9(b), neither the common law nor the statutory fraud claims can survive the motion to dismiss. We therefore grant Defendants' motion as to Counts I, III, and VI.

**B.     Negligence (Count II)**

Plaintiff alleges the Defendants were negligent for breaching their "duty to refrain from false, fraudulent, misleading, unfair and deceptive advertising, marketing, and labeling of the products they sell." (Compl. ¶¶ 61–62.) Defendants argue that the negligence claim is barred by the economic loss doctrine, because the "only injury Ms. Ibarolla alleges is that she lost substantial money purchasing products she would not have otherwise purchased." (Mem. at 13.) Under the economic loss doctrine (also known as the *Moorman* doctrine), a party may not "recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011) (citing *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill. 2d 69, 79–80, 435 N.E.2d 443, 448–49 (Ill. 1982)).

The Illinois Supreme Court recognizes three exceptions to the *Moorman* doctrine: (1) where the plaintiff sustained damage, such as personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, i.e., fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. *Id.* (citing *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 337–338, 843 N.E.2d 327, 333–34 (Ill. 2006)). Plaintiff contends that the second exception applies to her negligence claim. (Resp. at 12.) According to Plaintiff, "Defendant's Motion with respect to Plaintiff's negligence claim should be denied, as Plaintiff's allegations quite are clearly [*sic*] to support Plaintiff's allegations of fraud, and therefore support the application of the fraud-based exception to the economic loss rule . . ." (*Id.*)

Plaintiff's argument here appears to confuse basic tenets of tort law. She apparently contends that her negligence claim should survive because it is based on allegations of fraudulent conduct. That, of course, is impossible, because by definition fraud is intentional and negligence is not. *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 931 (N.D. Ill. 2000) (explaining that under Illinois law, intentional misconduct is "inconsistent with an allegation of ordinary negligence."); *Chicago, B. & Q.R. Co. v. Dougherty*, 12 Ill. App. 181, 188, 12 Bradw. 181 (2d Dist. 1883) ("Negligence can not exist where . . . the act of omission or commission is the result of willfulness, fraud, or intention, for where they commence, negligence ceases."). Therefore the second exception to the *Moorman* doctrine cannot apply to a negligence claim. *See Olson v. Hunter's Point Homes, LLC*, 964 N.E.2d 60, 64 (5th Dist. 2012) ("[I]t is clear that

under Illinois law, economic loss is recoverable where one intentionally makes false representations," but "a plaintiff cannot recover for economic losses under a theory of negligence."). It is possible to construe Count II as a claim for negligent misrepresentation, but then no exception of the *Moorman* doctrine would apply. Accordingly, the *Moorman* doctrine bars Plaintiff's negligence claim, and we therefore grant Defendant's motion to dismiss as to Count II.

**C.     Claims For Breach of Express and Implied Warranties (Count IV)**

Plaintiff alleges that each Defendant breached express warranties, implied warranties of merchantability, and implied warranties of fitness for a particular purpose. (Compl. ¶¶ 74–80.) For the following reasons, all of the breach of warranty claims against Defendants must be dismissed.

A.     *Pre-Suit Notice*

Under the UCC and Illinois law, a buyer "must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for breach of warranty." *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 794 (N.D. Ill. 2010) (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 491, 675 N.E.2d 584, 589 (Ill. 1996)); U.C.C. § 2-607; 810 ILCS 5/2-607(3)(a). Direct notice is not required when "(1) the seller has actual knowledge of the defect of the particular product; or (2) a consumer plaintiff suffers a personal injury." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d at 956. As we explained above, Plaintiff alleges that Defendants had actual knowledge of the potential dangers of the ingredients in the Nutrex products, but from the facts stated in the complaint, we can only infer that Defendants had such knowledge after receiving a warning letter from the FDA. Prior

to that time, according to Plaintiff, there had been "little research on the safety of DMAA." (Compl. ¶ 25.)  Thus, the complaint adequately alleges a basis and a time frame for Defendants' knowledge, but it gives no indication at all of when Plaintiff bought the products.  Accordingly, Plaintiff has failed to state that Defendants knew of the products' defects at the time of the alleged breach.  Neither does Plaintiff state that she suffered personal injury.  Therefore, she fails to properly allege that either exception to the pre-suit notice requirement applies, and we must dismiss all breach of warranty claims against both defendants.

      B.     *Express Warranties*

In addition to Plaintiff's failure to properly allege an exception to pre-suit notice, the claims for breach of express warranties also lack sufficient allegations of any affirmative statements of fact that could qualify as an express warranty.  "[T]o be actionable under the theory of express warranty the claim must be based on an affirmation of fact or promise which is not a statement representing the seller's opinion or commendation of the goods and which is false." *MacNeil Auto. Prods., Ltd.*, 715 F. Supp. 2d at 794 (citing *Weiss v. Rockwell Mfg. Co.*, 9 Ill. App. 3d 906, 914, 293 N.E.2d 375, 381 (Ill. 1973)).  A representation "must be (1) regarding a fact (that is, something that can be proven false); (2) of which the buyer is ignorant; and (3) that becomes part of the parties' bargain." *Id.* at 794–95.

First, Plaintiff alleges that "Nutrex lures consumers to purchase these products by boasting that they are the 'strongest fat destroyer we have ever released,' and proclaiming that they 'attack body fat with a killer instinct formulated to destroy it whenever the two meet.'" (Compl. ¶ 22.)  The parties agree that the latter statement is non-actionable puffery.  (Resp. at 5–6.)  Plaintiff maintains that the former is a "misleading and false statement." (*Id.*)

As an initial matter, we observe that we cannot impute any statement contained in Nutrex's promotional materials to Vitamin Shoppe for the purposes of creating an express warranty. *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1029 (N.D. Ill. 2008) ("In Illinois, the mere delivery, presentation or explanation of a manufacturer's warranty, without more, does not render a dealer a cowarrantor by adoption."). Even as to Nutrex, however, we do not find that the statement amounts to an express warranty. Stating that a certain product is the "strongest fat destroyer we have ever released" only conveys information about that product's effectiveness in relation to other Nutrex products. It could be very ineffective, or indeed dangerously unhealthy, and still be stronger than anything else Nutrex has released.[3] It is not a factual statement about an objective characteristic or capacity of the product. Accordingly, it cannot be the basis of an express warranty. *See MacNeil Auto. Prods., Ltd.*, 715 F. Supp. 2d at 794 (distinguishing between general averments of a product's high quality, which are not warranties, and specific statements about a product's characteristics, which are warranties).

Plaintiff further alleges that "Defendants represented to Plaintiff and the other members of the Class that the products were safe for consumption and free of any synthetics or substances that would cause dangerous side effects in the user." (Compl. ¶ 76.) She also refers to "Defendants' promises and affirmations on the labeling or contained on the websites maintained by Nutrex and Vitamin Shoppe." (*Id.* ¶ 77.) These general allegations are insufficient to state a claim for breach of express warranty, because they treat the Defendants as identical. The Defendants play different roles in this case, and there is no basis for presuming that they made

---

[3] Perhaps aware of relative nature of this statement, Plaintiff misquotes the statement in her response, altering it to "the strongest fat destroyer . . . ever released." (Resp. at 6.) Her elision, of course, significantly changes the statement's frame of reference, so here we only refer to the full statement as quoted in the complaint.

-13-

identical representations to Plaintiff. At a bare minimum, Plaintiff must identify what representations were made by each Defendant, so we can determine whether they amount to express warranties. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Further, the allegation regarding representations on Defendants' websites is problematic for an additional reason: it is normal for businesses to routinely change or update the content of their websites. Given the absence of any time frame in the complaint for when Plaintiff made her purchase, Defendants cannot necessarily identify what online representations are at issue in this case.

In order to state a claim, the complaint must at least give enough facts to provide "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1955. By failing to identify or distinguish the representations made by the two different Defendants, Plaintiff has failed to state enough facts to put Defendants on notice of the grounds for the breach of express warranty claims.

    C.    *Implied Warranties*

Plaintiff has further failed to state a valid claim for breach of implied warranties against Nutrex, because there is no privity of contract between Plaintiff and Nutrex. Under Illinois law, contractual privity is a "prerequisite for breach of implied warranty claims for recovery of economic losses." *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 838 (N.D. Ill. 2008) (citing *Voelker v. Porsche Cars North Am., Inc.*, 353 F.3d 516, 527 (7th Cir. 2003); *Jensen v. Bayer AG*, 371 Ill. App. 3d 682, 691, 862 N.E.2d 1091, 1099 (1st Dist. 2007). Thus implied warranties give "a buyer of goods a potential cause of action only against his immediate seller." *Jensen*, 371 Ill. App. 3d at 691 (explaining that the plaintiff could pursue a

breach of implied warranty claim against the pharmacy where he bought a defective drug, but not against the drug manufacturer). In this case, Plaintiff does not allege that she purchased the products directly from Nutrex. Therefore, besides the lack of pre-suit notice, which is grounds for dismissal of all the warranty claims against both Defendants, the breach of implied warranties claims against Nutrex are dismissed on the additional grounds of lack of contractual privity.

**D.    Unjust Enrichment**

Plaintiff included a separate count for unjust enrichment, but that claim is based on the same conduct that underlies the fraud claims. (Compl. ¶¶ 82–86 ("Through their numerous misleading, unfair, and deceptive claims relating to the safety of their products and the absence of any harmful compounds in those products, Defendants made millions of dollars. . .").) There is conflicting Illinois state court precedent on the question of whether unjust enrichment stands as an independent claim or requires an underlying tort claim to support it. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516–17 (7th Cir. 2011) (discussing contradictory Illinois case law on this issue). The Seventh Circuit has proposed a resolution to the doctrinal conflict, which we follow here: "Where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Id.* at 517 (quoting *Ass'n Benefit Serv. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007)). For the reasons explained above, each of Plaintiff's claims for fraud fail, so the claim for unjust enrichment must fail as well.

**E.    Request For Leave to Amend**

Plaintiff requested leave to amend her complaint in the event that we granted Defendants' motion to dismiss. (Resp. at 12–13.) Generally, leave to amend is liberally granted. *See* Fed. R. Civ. P. 15; *Jones v. Navia*, No. 09-CV-6968, 2010 WL 4878869, at *7 (N.D. Ill. Nov. 23, 2010). The decision to grant or deny leave to amend is "a matter purely within the sound discretion of the district court." *J.D. Marshall Int'l, Inc. v. Redstart, Inc.,* 935 F.2d 815, 819 (7th Cir. 1991). Proper reasons for denying leave to amend include "undue delay, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the argument." *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *see Guise v. BMW Mortgage, LLC,* 377 F.3d 795, 801 (7th Cir. 2004). None of the factors that would preclude amendment is present in this case at this time. Accordingly, we grant Plaintiff leave to amend her complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted without prejudice. We grant Plaintiff leave to file an amended complaint by December 6, 2012. It is so ordered.

 _____
 Honorable Marvin E. Aspen
 U.S. District Court Judge

Date: October 31, 2012