# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ROCHELLE IBAROLLA, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12 C 4848 |
| v. | ) ) | Judge Marvin E. Aspen |
| NUTREX RESEARCH, INC., and VITAMIN SHOPPE, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Plaintiff Rochelle Ibarolla ("Plaintiff"), individually and on behalf of a proposed national class of similarly situated plaintiffs, filed a four-count amended complaint against Defendants Nutrex Research, Inc. ("Nutrex") and Vitamin Shoppe, Inc. ("Vitamin Shoppe") (collectively, "Defendants"), alleging (1) violation of state consumer protection statutes, (2) common law fraud, (3) unjust enrichment, and (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. ("ICFA"). Presently before us is Defendants' motion to dismiss for failure to state a claim. For the reasons stated below, we grant Defendants' motion and dismiss Plaintiff's Amended Complaint without prejudice.

## BACKGROUND

We draw the following facts directly from the complaint and accept them as true for the purposes of the present motion. Nutrex is a manufacturer and distributor of dietary supplements designed to enhance weight loss, strength training, and athletic performance. (Am. Compl. ¶ 1.)

Vitamin Shoppe, a nationwide retailer of nutritional products and sports supplements, sells Nutrex products in its stores. (*Id.* ¶¶ 1, 18.)

In March 2012, Plaintiff purchased Lipo-6 Hers Ultra Concentrate ("Product"), a Nutrex product designed to assist weight loss, from a Vitamin Shoppe store in Chicago. (*Id.* ¶¶ 49–52.) The Product contained DMAA, a synthetic compound that allegedly causes harmful side effects. (*Id.* ¶¶ 22, 54.) The Product also contained a number of other stimulants, which allegedly pose health risks when taken in large doses or in combination. (*Id.* ¶¶ 32–37.) Although Plaintiff carefully inspected the label and other promotional materials before purchasing the Product, she found no warnings or information regarding the possible dangers of DMAA or the other compounds in the Product. (*Id.* ¶¶ 50–52.) Therefore, Plaintiff alleges that "she lost substantial money purchasing a product she would not have otherwise purchased." (*Id.* ¶¶ 55.)

One month after Plaintiff purchased the Product, the FDA sent a letter to Nutrex ("Warning Letter") informing them that "there is no history of use or other evidence of safety establishing that [DMAA] will reasonably be expected to be safe as a dietary ingredient." (*Id.*, Ex. A.) In the absence of such evidence, the FDA deemed six Nutrex products containing DMAA, including the Product Plaintiff purchased, to be adulterated under 21 U.S.C. §§ 342(f)(1)(B) and 350b(a). (*Id.*) Plaintiff now seeks to represent both a nationwide and a statewide class of consumers who purchased one or more of the six products named in the Warning Letter. (*Id.* ¶¶ 56–57.)

**STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

For claims that sound in fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, "an allegation of fraud must include the 'who, what, when, where,

and how: the first paragraph of any newspaper story.'" *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). In other words, "a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

**ANALYSIS**

**I.    Claims for Common Law Fraud and Violations of State Consumer Protection Statutes (Counts I, II, and IV)**

Plaintiff alleges that Defendants fraudulently concealed the potential dangers of the Product by omitting any warnings or information about possible health risks on the Product's label or promotional materials.[1] She raises her fraudulent concealment allegations on behalf of a national class under numerous state consumer protection statutes and as a claim for common law fraud (Counts I and II). (Am. Compl. ¶¶ 65–79.) She also raises these allegations under ICFA, on behalf of an Illinois subclass (Count IV). (*Id.* ¶¶ 86–92.)

When we dismissed the original complaint in this case, we identified three deficiencies that were fatal to Plaintiff's fraudulent concealment claims: (1) she failed to identify exactly which of the six Nutrex products she actually purchased; (2) she failed to identify when she made her purchase; and (3) she failed to establish that Defendants knew the product was

---

[1] The complaint refers to several statements Defendants allegedly made in their promotional materials regarding the Product. (Am. Compl. ¶¶ 39, 49.) Defendants argue that these statements are non-actionable puffery, and that Plaintiff failed to allege that these statements were false. (Mem. at 7–8.) In her response, Plaintiff did not dispute this point, but instead clarified that her fraud claims were based on the omission of any warnings regarding the alleged dangers of the Product, rather than affirmative misrepresentations. (Resp. at 4–6.)

4

dangerous at the time of her purchase. *Ibarolla v. Nutrex Research, Inc.*, No. 12 C 4848, 2012 WL 5381236, at *2–5 (N.D. Ill. October 31, 2012). Plaintiff cured the first two problems by identifying the Product and the approximate time period of her purchase, March 2012. (Am. Compl. ¶¶ 49, 52.) But Plaintiff has still not pled facts from which we can infer Defendants' knowledge of the Product's alleged dangers at the time Plaintiff made the purchase. Additionally, Plaintiff bases her fraud claims in part on omissions that are not necessarily deceptive in light of the alleged facts.

### A. Plaintiff has not alleged facts from which we can infer that Defendants knew DMAA was dangerous when Plaintiff purchased the Product.

Under Illinois law,[2] "where a plaintiff claims consumer fraud on the premise that the defendant concealed or omitted material facts from potential buyers with the intent that the buyers rely on such a concealment or omission, a plaintiff must allege that the fact omitted or concealed was known to the defendant at the time of the concealment." *Addison v. Distinctive Homes, Ltd.*, 359 Ill. App. 3d 997, 1001, 836 N.E.2d 88, 92 (1st Dist. 2005). This rule applies equally to fraudulent concealment claims under ICFA and the common law. *See PharMerica Chicago, Inc. v. Meisels,* 772 F. Supp. 2d 938, 957 (N.D. Ill. 2011) (listing "a false statement or omission of material fact" and "knowledge or belief of falsity by the party making it" as elements of common law fraud in Illinois) (citing *Weidner v. Karlin,* 402 Ill. App. 3d 1084, 1087, 932 N.E.2d 602, 605 (3rd Dist. 2010)); *Jensen v. Bayer AG*, 371 Ill. App. 3d 682, 689, 862 N.E.2d 1091, 1098 (1st Dist. 2007) ("For liability to attach due to an alleged concealment [under

---

[2] The parties agree that Illinois substantive law applies to all of counts of the Amended Complaint for the purposes of this motion to dismiss. (Am. Compl. ¶¶ 10–15; Mem. at 4.)

ICFA], a plaintiff must establish that the fact concealed was known to the seller at the time of concealment.")

Federal Rule of Civil Procedure 9(b) governs the adequacy of allegations sounding in fraud. Fed. R. Civ. P. 9(b); *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (explaining that claims for violation of the ICFA "must satisfy the particularity requirement of Rule 9(b). . ."). Although Rule 9(b) allows that knowledge "may be alleged generally," Fed. R. Civ. P. 9(b), the Supreme Court has explained that it does not give a plaintiff "license to evade the less rigid—though still operative—strictures of Rule 8. And Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 686, 129 S. Ct. at 1954. Accordingly, we accept general allegations of knowledge insofar as they are consistent with reasonable inferences we can draw from the facts in the complaint. *See Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1327 (Fed. Cir. 2009) ("Although 'knowledge' and 'intent' may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."); *DiLeo,* 901 F.2d at 629 ("Although Rule 9(b) does not require 'particularity' with respect to the defendant's mental state, the complaint still must afford a basis for believing that plaintiffs could prove scienter."); *Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402, 410 (E.D. Pa. 2012) (dismissing a claim under ICFA in part because "plaintiff has alleged no facts from which it can be inferred that [the defendant] knew of the defect" at the time of the alleged fraud.)

In our order dismissing the original complaint, we explained that we could only infer Defendants knew about the dangers of DMAA after Nutrex received the Warning Letter from the FDA. *Ibarolla*, 2012 WL 5381236, at *4. The same conclusion applies here. Plaintiff states that "Nutrex received this letter because there has been little research on the safety of DMAA . . . ." (Am. Compl. ¶ 23.) The Warning Letter itself states that to "the best of FDA's knowledge, there is no history of use or other evidence of safety establishing that [DMAA] will reasonably be expected to be safe as a dietary ingredient." (Am. Compl., Ex. A.) An absence of knowledge regarding a product's safety does not imply actual knowledge of a product's dangers. As we stated in our prior order, the "most reasonable inference we can draw from these facts, as stated by Plaintiff, is that Defendants had little or no information about the safety of DMAA before receiving the [Warning Letter] from the FDA . . ." *Ibarolla*, 2012 WL 5381236, at *4.

The Amended Complaint specifies that Plaintiff purchased the Product a month before Nutrex received the Warning Letter. (Am. Compl. ¶ 49.) Yet it contains no new facts from which we could infer that Defendants knew the Product was dangerous at that time.[3] Instead, Plaintiff alleges that "Nutrex had a statutory duty to investigate the safety of the Products'

---

[3] Plaintiff repeats allegations regarding "42 adverse event reports on products containing DMAA" received by the FDA and an "ongoing safety review" of DMAA by the U.S. Army. (Am. Compl. ¶¶ 30–31.) In our previous order, we explained why these facts do not support allegations of Defendants' knowledge, and the same explanation applies equally here. *Ibarolla*, 2012 WL 5381236, at *4.

7

ingredients," (*Id.* ¶ 24)[4] and that "Defendants were required to have knowledge as to the legality, natural occurrence and safety of the Products prior to their sale and distribution." (*Id.* ¶ 28.)

The fact that Defendants had a duty to investigate the safety of the Product, however, does not mean Defendants actually fulfilled their duty. In fact, the FDA's reasons for sending the Warning Letter to Nutrex suggest precisely the opposite: "Because the required notification has not been submitted, your products are adulterated under 21 U.S.C. 342(f)(1)(B) and 350b(a)." (Am. Compl., Ex. A.) In light of Nutrex's failure to meet these FDA requirements, which prompted the Warning Letter in the first place, the requirements themselves provide no basis for inferring that Nutrex investigated the dangers of DMAA prior to receiving the letter.

Without facts indicating knowledge on the part of Nutrex, there is no basis for inferring knowledge on the part of Vitamin Shoppe. Plaintiff bases her allegations of Vitamin Shoppe's knowledge on the retailer's practice of reviewing the information submitted by its vendors. (Am. Compl. ¶¶ 46–48.) Clearly, Nutrex could not have informed Vitamin Shoppe of any dangers that it was unaware of itself. Furthermore, Plaintiff's allegation that "there had been little research on DMAA" prior to the Warning Letter weighs against the inference the Vitamin Shoppe had independent knowledge of the dangers of DMAA. (Am. Compl. ¶ 23.)

General allegations of knowledge under Rule 9(b) must include sufficient facts to "show that it is plausible, rather than merely speculative, that [the plaintiff] is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008); *Iqbal*, 556 U.S. at 686, 129 S. Ct.

---

[4] In her response, Plaintiff conspicuously rewords this sentence to state: "Nutrex had [knowledge through exercise of] its statutory duty. . ." (Resp. at 9 n.3.) This mischaracterization of the complaint merely highlights the deficiency of the actual allegation. Moreover, this is the second time Plaintiff's counsel has misquoted her own allegations in an apparent effort to salvage a losing argument. *See Ibarolla*, 2012 WL 5381236, at *7 n.3.

8

at 1954. The allegations in this complaint, read in conjunction with the Warning Letter, plausibly suggest that Nutrex failed to adequately investigate the safety of DMAA before including it in the Product. Releasing a product to the public without adequately investigating its safety may violate federal regulations, but it is not fraud. We would cross the line into speculation if we took the step of inferring that either Defendant had actual knowledge of the dangers of DMAA before receiving the Warning Letter. Plaintiff has not alleged sufficient facts to support that inference. Therefore, Plaintiff has failed to state a claim for fraudulent concealment based on the alleged dangers of DMAA.

> **B.   Plaintiff has not stated a claim based on the alleged dangers of the other ingredients in the Product.**

In addition to DMAA, Plaintiff claims that the Product contains a number of other ingredients that are harmful if consumed in large quantities or in combination, which Defendants allegedly fraudulently concealed. (Am. Compl. ¶¶ 32–38.) These allegations fail because the Plaintiff did not plead specific facts showing that the omission of a warning about these ingredients was a deceptive act. "To state a cause of action for *fraudulent concealment* as a deceptive act or practice, the plaintiff must allege that the defendant omitted or concealed a material fact . . ." *Munch v. Sears, Roebuck & Co.*, No. 06 C 7023, 2008 WL 4450307, at *3 (N.D. Ill. Sept. 30, 2008) (emphasis in original). The circumstances constituting the deceptive act must be pled with particularity. Fed. R. Civ. P. 9(b); *Munch*, 2008 WL 4450307, at *2 ("To successfully plead a claim under ICFA, a complaint must set forth *specific facts* showing a deceptive act or practice . . .") (emphasis added).

The facts alleged in the Amended Complaint only tell us that certain ingredients—caffeine, synephrine, yohimbe, and thyronine—can be dangerous in unspecified quantities, or

9

possibly when taken in combination. (Am. Compl. ¶¶ 32–38.) It does not follow that this particular Product is dangerous as a result. There are many substances that are severely harmful at certain levels of exposure, but acceptably safe in smaller quantities. Almonds, spinach, and lima beans all contain the potentially fatal chemical cyanide, for instance,[5] but grocery stores that fail to warn their customers of that fact are not liable for fraud, because under normal conditions those foods are perfectly safe.

Unless these ingredients are dangerous as contained in this specific Product, the omission of a warning would not be deceptive. The court in *Munch* came to a similar conclusion, albeit in a different context. 2008 WL 4450307, at *6. In that case, the plaintiff alleged fraudulent concealment of the defective condition of a washer-dryer. The court found that the plaintiffs had not pled enough facts to show that the machines were actually defective compared to the normal rate of failure for similar machines. *Id.* Accordingly, the court dismissed the complaint for lack of "particularity in pleading a deceptive practice." *Id.* Similarly, in this case, Plaintiff has not offered enough facts to show the ingredients are dangerous in the quantities that the Product contains, so she has failed to state a claim that the omission of a warning was deceptive.

Plaintiff argues that she cannot possibly know the quantities of the ingredients in the Product, because Nutrex "refers to the formulation as a 'proprietary blend.'" (Am. Compl. ¶ 38.) We are mindful of the fact that "in fraud cases, there is an exception to the particularity requirement when the facts on which the allegations are based are in the defendant's control." *Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1280 (N.D. Ill. 1996). Accordingly, we

---

[5] N.Y. Dept. of Health, *The Facts About Cyanide*, http://www.health.ny.gov/ environmental/emergency/chemical_terrorism/cyanide_general.htm (last visited Feb. 4, 2012).

do not require Plaintiff to allege the actual composition of the Product. But even under this more relaxed standard, Plaintiff must still provide some factual basis for her allegation. *Amakua Dev. LLC v. Warner,* 411 F. Supp. 2d 941, 954 (N.D. Ill. 2006) ("[W]here the details are within a defendant's exclusive knowledge . . . the heightened burdens imposed by Rule 9(b) may be satisfied by the plaintiff alleging with specificity the basis for the 'information and belief' allegations.") (internal citations omitted); *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 320 (S.D.N.Y. 2006) (". . . there is a limited exception to the Rule 9(b) requirement that fraud be pleaded with particularity which is applicable when the subject matter is peculiarly within a defendant's knowledge. Even in that circumstance, however, the allegations must be accompanied by a statement of facts upon which the belief is founded.") (internal quotations and citations omitted). Here, the facts in the amended complaint do not provide any basis for the allegation that the ingredients other than DMAA are dangerous as contained in this particular Product. Therefore, Plaintiff has failed to state a claim for fraud with respect to Defendants' omission of a warning about those ingredients.

### C. The omission of the fact that DMAA is synthetic is not fraudulent.

Besides the potential dangers of DMAA, Plaintiff appears to rest her fraud claim in part on the fact that DMAA is a non-naturally occurring, synthetic compound. (Am. Compl. ¶¶ 29, 42.) ("Defendants . . . concealed their knowledge of DMAA being a non-naturally occurring, synthetic compound.") There is no indication, however, that this omission was deceptive.

As Defendants correctly point out, Plaintiff "does not allege that any of the products were labeled as 'all-natural' or contained any other statement that would lead to the conclusion that the products did not contain 'non-naturally occurring' [ingredients]." (Reply at 9 n.6.) The only

11

affirmative representations about the Product attributed to Defendants in the Complaint relate to the Product's effectiveness as a weight loss supplement. (Am. Compl. ¶ 39.) These statements imply nothing about whether the ingredients are natural or synthetic.

Plaintiff argues that this omission was nevertheless deceptive because Defendants marketed the Product as a "dietary supplement." (Resp. at 4.) She further clarifies that "the term 'dietary supplement' is used here as defined in 21 U.S.C. 321(ff) . . ." (*Id.* at 4 n.1.) Plaintiff misreads the statute. The definition of "dietary supplement" does not exclude products that contain synthetic ingredients. *See Hammer v. Vital Pharm., Inc.*, No. 11 C 4124, 2012 WL 1018842, at *6 (D.N.J. March 26, 2012). In *Hammer*, the New Jersey district court considered fraud allegations very similar to those in this case. *Id.* at *1–6. Specifically, the plaintiff in *Hammer* alleged that a product, Clenbutrx, was improperly labeled as a dietary supplement because it contained a synthetic compound. *Id.* at *5–6. The court held that this allegation did "not come close to stat[ing] a claim under the statutory scheme of § 321(ff)." The court further explained:

> the statute specifically provides for the labeling of a product as a "dietary supplement" if the supplement contains *one or more* specified dietary ingredients. *See* 21 U.S.C. § 321(ff)(1). In fact, the statute does not require that *every* ingredient must be a dietary ingredient . . . Simply stated, the mere fact that apple geranium in Clenbutrx may not be an herb or a botanical does not necessarily mean that Clenbutrx does not have other dietary ingredients that would qualify it as a dietary supplement. Moreover, Plaintiff has failed to allege that Clenbutrx is not intended to be used as a dietary supplement. *Id.*

We find this reading of the statute persuasive. The statute defines a dietary supplement according to its intended use and identifies certain ingredients it must contain, but it does not prohibit the inclusion of synthetic ingredients. 21 U.S.C. § 321(ff). Accordingly, Plaintiff has

12

not stated a claim for fraud by alleging that Defendants marketed the Product as a dietary supplement while omitting any warning that it contained a synthetic ingredient.

## II.     Claim for Unjust Enrichment (Count III)

As we explained in our previous order, we follow the Seventh Circuit's guidance on whether to consider unjust enrichment independently from fraud claims under Illinois law. *Ibarolla*, 2012 WL 5381236, at *8.  In *Cleary v. Philip Morris Inc.,* the court determined that when "the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."  656 F.3d 511, 516–17 (7th Cir. 2011) (reviewing contradictory Illinois state case law on this issue).  Thus, as Plaintiff's fraud claims fail, so must her unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, we dismiss the Amended Complaint without prejudice.  It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: February 25, 2013